UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JARAY GRIFFIN,

    Plaintiff,

                              05-3048

IDOC DIRECTOR ROGER WALKER,
DR. LOWELL BROWN,
WARDEN TERRY POLK,
HEALTH CARE ADMINISTRATOR
DEBORAH FUQUA,

    Defendants.

## **Order**

    The plaintiff claims the defendants were deliberately indifferent to his serious medical needs. Specifically, the plaintiff alleged in his Complaint that he severe, untreated allergies and hives. He alleges that Dr. Brown was deliberately indifferent to that condition by experimenting with potent medicines causing serious side effects. The plaintiff also contends that Dr. Brown delayed sending the plaintiff to an allergist and then failed to follow the allergist's recommendations.

    Before the court are defendants' motions for summary judgment. (d/e's 36, 37). After careful consideration of the parties' submissions, the court concludes that the plaintiff has not established a reasonable inference that Dr. Brown was deliberately indifferent to any of the plaintiff's medical needs. That conclusion mandates summary judgment for Dr. Brown as well as all the other defendants, who were entitled to rely on Dr. Brown's professional decisions.

*Summary Judgment Standard*

    A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);Fed. R. Civ. P.56(c). This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue

1

for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994).

In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Facts*

The plaintiff has been incarcerated at the Western Illinois Correctional Center during all times relevant. On December 5, 2002, Plaintiff was diagnosed with a wool allergy that caused hives.

Dr. Brown is a licensed medical doctor, and worked as a family practitioner in Sangamon County, Illinois, for 19 years, from 1981 to 2000. Since 2002, Dr. Brown has worked at various correctional institutions. (Dr. Brown Aff. Para. 2).

Dr. Brown first saw the plaintiff on January 29, 2004, who presented for hives. (Dr. Brown Aff. Para. 3). Dr. Brown "reviewed the Plaintiff's current medication list and ordered varying medications, some of which the Plaintiff had taken on prior occasions." *Id.* para. 4.

Dr. Brown saw the plaintiff again on April 13, 2004, for the plaintiff's reports of allergic symptoms and ordered "different medication." (Dr. Brown Aff. para. 5). Dr. Brown prescribed steroids for the plaintiff "to address the Plaintiff's symptoms and ease his perceived discomfort." *Id.* at para. 5. Dr. Brown prescribed prednisone again on June 22, 2004 and July 3, 2004. On July 10, 2004 Dr. Brown ordered Vistaril, "a medication used for the treatment of allergic type symptoms and overall discomfort associated with these symptoms." (Dr. Brown Aff. para. 8). The following day, Dr. Brown prescribed steroids based on the plaintiff's complaints. *Id.* para. 9.

On or around August 17, 2004, Dr. Brown sent the plaintiff to an outside allergist. "This allergist ordered several blood tests, all of which were completely normal." (Dr. Brown Aff. Para. 10). According to the allergist's report, the plaintiff reported that he had been experiencing chronic urticaria (hives) and angioedema (welts) for the past 3-4 years. (8/17/04 allergist report attached to Plaintiff's Response (d/e 40)). The plaintiff also reported "that after using weights, the areas where patient has had significant pressure generally erupt approximately 4-6 hours later . . . . . *Id.* The reports lists the following current medications: Singulair, 10 mg daily, Zantac, 150 mg b.i.d., Atarax 50 mg t.i.d. and QR 40 mg 1 puff b.i.d. *Id.*

The allergist's physical examination of the plaintiff was unremarkable:

> Reveals well-developed, well-nourished black male in no acute distress. Blood pressure 153/96. Pulse 63. Respiratory rate 22. HEENT exam revealed normal appearing turbinates, midline septum. No discharge. Otic canals were clear. Tympanic membranes within normal limited. Neck supple. . . Chest clear . . .Cardiac exam . . . regular. . .No active skin lesions . . . normal pulmonary flow with a flow volume loop suggestive of variable extrathoracic obstruction. The patient has a raspy, deep voice which he has had for a long time and apparently takes part in energetic singing. . . Negative at 20 minutes to all tested antigens. . . marginal response to dust mite. . .Screen for foods . . . also negative. (8/17/04 allergist report attached to Plaintiff's Response (d/e 40)).

The allergist diagnosed "delayed pressure urticaria by history", noting that the plaintiff's history was consistent with this diagnosis "as well as possible systemic complaints which are not uncommon with delayed pressure urticaria." *Id.* The allergist recommended trying 25 mg of Doxepin at bedtime, which the allergist had found to work in other patients, and which Dr. Brown describes an anti-anxiety drug. However, the allergist acknowledged that Doxepin might not work: "In general, regular antihistamines were very unsuccessful treatment with pressure urticaria and other than avoidance of deep pressure, the only successful therapy tends to be every other day corticosteroid therapy for suppression." The allergist reports also recommends blood tests to rule out chronic underlying illness and a one-month follow-up to "reevaluate at that time for alterations and therapy in response to doxepin suppression." The allergist also noted, "[a]s for the variable extrathoracic obstruction, that may bear further evaluation with upper airway endoscopy in the future." The IDOC consultation report lists "delayed pressure urticaria" for findings, and recommends blood labs, 25 mg Doxepin and a follow up in one month. (IDOC consultation report attached to Plaintiff's Response, d/e 40). Dr. Brown signed off on the recommendations in the IDOC report. *Id.*

On August 19, 2004, Dr. Brown ordered the Doxepin and a steroid injection for the plaintiff. Dr. Brown authorized an additional steroid injection on August 22 and 25, 2004, in response to the plaintiff's complaints of allergic symptoms. (Dr. Brown Aff. paras. 11-13).

On August 26, 2004, Dr. Brown prescribed Klonopin, he avers on the recommendation of Dr. Stiles, a staff psychologist (but there is no affidavit from Dr. Stile as the plaintiff points out). The Klonopin was apparently an attempt to help the plaintiff avoid long term use of steroids and instead "wait out the symptoms during one of [the plaintiff's] 'attacks.'" (Dr. Brown Aff. para. 14). Dr. Brown describe Klonopin as an anti-anxiety drug. (Dr. Brown Aff. para. 14). It is not clear whether the plaintiff was still taking Doxepin (also an anti-anxiety drug) at the time Klonopin was prescribed, and there is no information on the record about the interaction of the drugs.

On or around August 26, 2004, Dr. Brown reduced the plaintiff's Klonopin "by half because of symptoms called ataxia. Ataxia is a [sic] impairment of the nerve and muscle

3

function." (Dr. Brown Aff. para. 15). No further information is given about the ataxia, but Dr. Brown avers that the plaintiff continues to take Klonopin to this day at a lower dose. At some point, it appears the plaintiff refused to take the Doxepin because of the side effects he was experiencing.

Dr. Brown did not send the plaintiff for his one-month follow up visit with the allergist because he decided there would be nothing gained from it. "[O]ther than the current medication regiment, he [the allergist] could offer nothing else for Plaintiff's complaints. Based on the allergist's recommendations, I did being administering a maintenance dose of prednisone every other day which seemed to ameliorate Plaintiff's complaints."

Dr. Brown saw the plaintiff in September 2004 "during one of his 'throat closing attacks.' Dr. Brown states that he thoroughly examined the plaintiff during this "attack" and that, "There was no anatomic pathology which would restrict his air flow. In addition, blood oxygen saturation monitoring was well within normal limits. Based on my medical experience, training and education, the Plaintiff was in no danger to any aspect of his health." (Dr. Brown Aff. para. 17). On September 28, 2004, the plaintiff was admitted to the infirmary "to monitor his continued complains of allergic type symptoms. . . . He received a Benadryl injection . . and he did well . . . through the night." (Dr. Brown Aff. para. 18).

On October 20, 2004, the plaintiff's Doxepin was restarted to treat the plaintiff for major depression, which Dr. Brown avers had been diagnosed by the psychiatry department. (Dr. Brown Aff. para. 21). Dr. Brown avers that Plaintiff refused further administration of Doxepin on October 28, 2004. On November 20, 2004, Dr. Brown adjusted the prescribed steroids "to equalize the drug free time spans each week." (Dr. Brown Aff. para. 23). On February 2, 2005, Dr. Brown lowered the does of Klonopin in response to the plaintiff's complaint that "his memory was 'blunted.'" (Dr. Brown Aff. para. 24).

Dr. Brown avers that he performed an annual exam on the plaintiff on April 13, 2005, "at which time the Plaintiff was complaint free and otherwise healthy." The plaintiff denies that he was complaint-free during that exam. Dr. Brown concludes:

> In my medical judgment which is based on my training, education [and xperience, the course of treatment outlined above for Plaintiff's complaints of allergic symptoms is completely appropriate and within the standard of care for physicians. I chose the only reasonably safe medications for these symptoms including steroids. The steroid are of particular importance because of the significantly detrimental effects of long term steroid use. . .
>
> . . .These ['throat-closing] attacks are largely physically asymptomatic as the oxygen saturation levels and overall health of the patient remain unchanged during these attacks. It is my professional opinion and belief that these attacks are not from a result of any exposure to a specific allergen, but rather <u>may</u> be manifesting themselves because of psychological reasons . . . (Dr. Brown Aff.

paras. 28-29)(emphasis in original).

*Analysis*

The plaintiff has serious medical needs, but there is no evidence that Dr. Brown was deliberately indifferent to those needs. Plaintiff asserts that hives may be the first sign of deadly anaphylaxis. He argues that his referral to an outside allergist was dangerously delayed and that Dr. Brown failed to follow the allergist's recommendations, including the follow-up appointment. However, there is nothing in the record to suggest that the perceived delay or missed follow-up appointment affected the plaintiff's medical condition in any way. *See Langston v. Peters*, 100 F.3d 1235, 1240-41 (7th Cir. 1996)(quoting with approval the Eighth Circuit in *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (1996)(abrogated on other grounds in *Reece v. Groose*, 60 F.3d 487 (8th Cir. 1995)): "'An inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed.'"(emphasis in *Langston*)).

The plaintiff asserts that Doxepin was not given every night as prescribed by the allergist, but attachments show that Dr. Brown approved of the labs and the prescription for Doxepin. There is no evidence Dr. Brown was behind Plaintiff not receiving the Doxepin, if that is what happened. Further, the plaintiff appears to be the one who voluntarily discontinued the Doxepin because of its side effects.

The plaintiff asserts that the prescription of steroids and Klonopin were not recommended, but he offers no evidence to support that assertion. In fact, the allergist report states that every-other day steroids are usually the only effective treatment. As to the Klonopin, it is undisputed that the plaintiff experienced ataxia and that his dose of Klonopin was lowered in response. However, he continues to take a lower dose of Klonopin, which Dr. Brown avers is medically appropriate. There is no evidence to dispute Dr. Brown's assertion. Plaintiff asserts that Dr. Brown combined too many medications, causing Plaintiff to become addicted, but there is no evidence to support that conclusion either.

Plaintiff further asserts that he never received the endoscopy recommended by the allergist, but that was only a suggested possibility, not a current recommendation. The report says only that the plaintiff's "variable extrathoracic obstruction . . . may bear further evaluation with upper airway endoscopy in the future." That does not allow an inference that the plaintiff has a serious medical need for an endoscopy. Plaintiff asserts that he is still experiencing throat attacks and difficulty breathing. The court does not disbelieve the plaintiff is experiencing these symptoms, but no inference arises that the plaintiff is not being appropriately treated for them, much less that Dr. Brown is deliberately indifferent to them.

Since there is no evidence of deliberate indifference by Dr. Brown, there can be no inference of deliberate indifference by any of the other defendants, all non-medical prison officials. In the context of medical treatment, "if a prisoner is under the care of medical experts .

5

. . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands . . ." *Greeno v. Daley,* 414 F.3d 645, 656 (7th Cir. 2005).

       IT IS THEREFORE ORDERED:

       1) The motions for summary judgment are granted (d/e's 36, 37).  The Clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff pursuant to Fed. R. Civ. P. 56.  The case is terminated.  The parties are to bear their own costs.

       2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)(c).  If the plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal.

       Entered this <u>7th</u>  Day of <u>March</u>, 2007.

                                                         **s\Harold A. Baker**

                                                         HAROLD A. BAKER
                                              UNITED STATES DISTRICT JUDGE